LONNIE D. GIAMELA, SBN 228435
lgiamela@fisherphillips.com
SEAN F. DALEY, SBN 272493
sdaley@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendant
RED ROBIN INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MARCIANO TOPETE,<br><br>           Plaintiff,<br><br>     v.<br><br>RED ROBIN INTERNATIONAL, INC., a Nevada Corporation, doing business as RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1 through 20, inclusive,<br><br>           Defendants. | Case No:  8:17-cv-01721 AG (JDEx)<br>*[Originally Orange County Superior Court Case No.: 30-2017-00930423-CU-OE-CJC]*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RED ROBIN INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Notice of Motion and Motion, Separate Statement of Uncontroverted Facts and Conclusions of Law, Declaration of Sean F. Daley, Appendix of Exhibits in support thereof, [Proposed] Order, and [Proposed] Judgment]*<br><br>Date:          August 20, 2018<br>Time:          10:00 a.m.<br>Location:      Courtroom 10D<br>                   411 West Fourth Street<br>                   Santa Ana, California<br><br>Complaint Filed:   July 7, 2017<br>FAC Filed:          July 27, 2017<br>Trial Date:          October 2, 2018 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. U.S.*,
350 F.3d 1216 (Fed. Cir. 2003) ................................................................. 13, 15

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003) ........................................................................ 18

*Amaral v. Cintas Corp.*,
163 Cal. App. 4th 1157 (2008) ...................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................... 9

*Armenta v. Osmose, Inc.*,
135 Cal. App. 4th 314 (2005) .................................................................. 10, 11

*Baker v. Norman*,
651 F.2d 1107 (5th Cir. 1981) ........................................................................ 8

*Barnhill v. Robert Saunders & Co.*,
125 Cal. App. 3d 1 (1981) ........................................................................... 9, 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 8

*Chao v. A-One Med. Servs., Inc.*,
346 F. 3d 908 (9th Cir. 2003) ....................................................................... 13

*Coleman v. Jiffy June Farms, Inc.*,
458 F.2d 1139 (5th Cir. 1972) ...................................................................... 15

*Donovan v. Burger King Corp.*,
672 F.2d 221 (1st Cir. 1982) ......................................................................... 14

*Donovan v. Burger King Corp.*,
675 F.2d 516 (2d Cir. 1982) .................................................................... 14, 15

*First Nat'l Ins. Co. v. FDIC*,
977 F. Supp. 1051 (S.D. Cal. 1997) ............................................................... 8

i

FPDOCS 34317772.1

*Jackson v. Advance Auto Parts, Inc.*,
    362 F. Supp. 2d 1323 (N.D. Ga. 2005) ............................................................ 14

*Lopez v. Corporacion Azucarera de P.R.*,
    938 F.2d 1510 (1st Cir. 1991) ....................................................................... 16

*Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................... 8

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988) ................................................................................ 13, 15

*Murray v. Stuckey's, Inc.*,
    939 F.2d 614 (8th Cir. 1991) ........................................................................ 15

*Musgraves v. Sears Holding Mgmt. Corp.*,
    No. 11-0625, 2012 WL 3222905 (C.D. Cal. July 19, 2012) ............................ 14

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*,
    701 F.2d 95 (9th Cir. 1983) ............................................................................. 9

*Nelson v. Waste Mgmt. of Alameda Cnty, Inc.*,
    33 Fed. Appx. 273 (2002) .............................................................................. 13

*Ramirez v. Yosemite Water Co.*,
    20 Cal. 4th 785 (1999) ................................................................................... 10

*Reich v. Gateway Press, Inc.*,
    12 F.3d 685 (3d Cir. 1994) ............................................................................ 16

*Robi v. Five Platters, Inc.*,
    918 F.2d 1439 (9th Cir. 1990) ......................................................................... 8

*Rodriguez v. Farm Stores Grocery*,
    518 F.3d 1259 (11th Cir. 2008) ...................................................................... 16

*Schneider v. City of Springfield*,
    102 F. Supp. 2d 827 (S.D. Ohio 1999) ........................................................... 16

*SEIU, Local 02 v. Cnty of San Diego*,
    60 F.3d 1346 (9th Cir. 1994) ......................................................................... 15

*Sherman v. Premium Concrete Cutting, Inc.*,
    2004 WL 1510030 (N.D. Ill. July 6, 2004) ................................................ 13, 15

ii

TABLE OF AUTHORITIES

*Smith v. Rae-Venter Law Grp.*,
    29 Cal. 4th 345 and 4 (2002) .......................................................................... 10

*Wong v. Pape Machinery, Inc.*,
    2009 WL 937481 (E.D. Cal. Apr. 7, 2009) .................................................... 11

**Statutes**

29 U.S.C. § 216(b) ............................................................................................ 18

29 U.S.C. § 255(a) ............................................................................................ 13

29 U.S.C. § 260 ................................................................................................. 18

Cal. Code Regs., tit. 8, § 13520 .................................................................. 10, 12

**Other Authorities**

29 C.F.R. § 541.100 .......................................................................................... 14

29 C.F.R. §541.102 ........................................................................................... 15

29 C.F.R. § 541.700(a) ..................................................................................... 14

Fed. R. Civ. P. 56(b) ........................................................................................... 8

Fed. R. Civ. P. 56(c) ........................................................................................... 8

Fed. R. Civ. P. 56(e) ........................................................................................... 8

iii

TABLE OF AUTHORITIES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 0

II.   PROCEDURAL BACKGROUND ........................................................ 1

III.  STATEMENT OF FACTS ..................................................................... 2

    A.  Red Robin ...................................................................................... 2

    B.  Kitchen Manager Duties ............................................................... 2

    C.   PLAINTIFF'S EMPLOYMENT WITH RED ROBIN ........................ 4

    D.  DUTIES PLAINTIFF WAS EXPECTED TO PERFORM AS A KITCHEN MANAGER ................................................................. 4

    E.  PLAINTIFF'S AUTHORITY AND DISCRETION ........................... 5

    F.  PLAINTIFF MADE NO COMPLAINTS TO HUMAN RESOURCES OR ANY GOVERNMENTAL AGENCY THAT HE WAS MISCLASSIFIED AS EXEMPT PRIOR TO THE FILING OF THE INSTANT LAWSUIT ............................................... 6

III.  LEGAL STANDARD ............................................................................ 7

IV.   LEGAL ARGUMENT ........................................................................... 8

    A. Red Robin Is Entitled To Summary Judgment On Plaintiff's Claim For Waiting Time Penalties Pursuant To California Labor Code Section 203 ................................................................................... 8

        1. *California's Executive Exemption* ................................................ 8

        2. *Under California Labor Code Section 203, Plaintiff Must Prove Red Robin Lacked a Good Faith Basis to Dispute His Claim for Additional Pay.* ..................................................... 9

        3. *Red Robin Had a Good Faith Belief that It Had Paid All Compensation Due When Plaintiff's Employment Terminated.* .......................................................................... 10

        4. *Plaintiff Cannot Satisfy His Burden to Demonstrate that Red Robin Acted Willfully Under Labor Code Section 203.* ......... 11

    B. Plaintiff's FLSA Claim Cannot Extend Beyond The Two-Year Limitations Period Because There Is No Evidence Of Any Willful Violation. ........................................................................ 12

        1. *The FLSA Executive Exemption* ................................................ 12

        2. *Plaintiff Must Prove That Red Robin Acted Willfully* ................. 14

        3. *Plaintiff Cannot Prove That Red Robin Acted Willfully* ............. 15

    C. Plaintiff Is Not Entitled To Liquidated Damages Because Red Robin Acted In Good Faith And Had Reasonable Grounds For Believing That It Was Complying With The FLSA ...................... 17

V.    CONCLUSION ..................................................................................... 17

TABLE OF CONTENTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The instant matter is a misclassification case between Plaintiff MARCIANO TOPETE ("Plaintiff") and his former employer, RED ROBIN INTERNATIONAL, INC. ("Red Robin").  The legal claims in this case center around a core set of facts.  Red Robin employed Plaintiff as a Kitchen Manager at one of its restaurants in Irvine, California.  Red Robin, in good faith, classified Plaintiff as exempt from overtime, meal periods and rest periods under applicable state and federal law.  Plaintiff challenges his exemption status and seeks unpaid wages and related penalties regarding the misclassification.  It is undisputed that Plaintiff made the requisite salary to qualify for the exemption under both state and federal law and that Plaintiff was expected to perform managerial duties, including directing the work of restaurant employees and using his independent judgment and discretion to ensure each shift he worked ran smoothly and to support the general business operations at the Irvine restaurant.  The dispute lies only over whether Plaintiff actually performed these managerial duties he was expected to perform to satisfy the requirements for the exemption test under both state and federal law.

In this motion Red Robin makes a series of arguments recognizing that there is a dispute about whether Plaintiff was properly classified as exempt, but asserting that if it was determined that Plaintiff was misclassified (which he was not), Red Robin's classification of Plaintiff as exempt was in good faith and there is no evidence of any willfulness both as to Plaintiff's claim for "waiting time penalties" pursuant to California Labor Code section 203 (Fourth Cause of Action) and Plaintiff's claim for liquidated damages pursuant to 29 U.S.C. section 216(b) of the federal Fair Labor Standards Act ("FLSA") (Second Cause of Action) (*see* Docket No. 1-2, ¶ 33).  *First*, Red Robin moves for partial summary judgment of Plaintiff's claim for waiting time penalties pursuant to Labor Code section 203 as Plaintiff cannot establish the elements of this claim.  The undisputed evidence demonstrates

Red Robin had a good faith basis to believe it had properly classified Plaintiff as exempt.  Any violation, therefore, was not "willful" and the Court should grant partial summary judgment.

*Second*, Red Robin seeks partial summary judgment determining that Plaintiff's claim for violation of the FLSA cannot extend beyond a two-year statute of limitations period as a matter of law because there is no evidence of any willful violations of the FLSA by Red Robin.

*Lastly*, Red Robin seeks partial summary judgment of Plaintiff's claim for liquidated damages pursuant to the FLSA as a matter of law because Red Robin had a good faith belief in Plaintiff's exempt status as a Kitchen Manager of Red Robin's Irvine restaurant and Plaintiff is unable to demonstrate that Red Robin did not have reasonable grounds for believing that it was complying with the FLSA in classifying Plaintiff as an exempt employee.

## II.     PROCEDURAL BACKGROUND

On July 7, 2017, Plaintiff filed a complaint for damages in the Superior Court of the State of California in and for the County of Orange, entitled *Marciano Topete v. Red Robin International, Inc., et al.*, Case No. 30-2017-00930423-CU-OE-CJC, alleging various wage and hour violations against Red Robin, including (1) failure to pay overtime wages, (2) a claim for liquidated damages pursuant to California Labor Code section 1194.2, (3) failure to provide meal and rest periods, (4) failure to provide accurate itemized wage statements, (5) violation of Labor Code section 203, and (6) an unfair business practices claim.  (Docket No. 1-1).

On July 27, 2017, Plaintiff filed a First Amended Complaint, removing the claim for liquidated damages pursuant to California Labor Code section 1194.2 and adding a claim for violation of the FLSA.  (Docket No. 1-2).  Based on the addition of the federal claim and federal question jurisdiction, Red Robin removed the lawsuit to the United States District Court for the Central District of California (Southern Division) pursuant to 28 U.S.C. §§ 1331, 1367, and 1441.  (Docket No. 1).

On April 30, 2018 and June 22, 2018, defense counsel for Red Robin completed the deposition of Plaintiff.  Plaintiff's counsel completed the depositions of Red Robin employees Rebecca Bailey and Adin Philleo on May 2, 2018 and Karin Davie on May 4, 2018.

## III.   STATEMENT OF FACTS

### A.   Red Robin

Red Robin owns and operates restaurants throughout the United States and throughout California.   The Irvine, California restaurant is comprised of a management team that consists of a Regional Operations Director ("ROD"), who oversees several restaurants within a specified geographical region, and a General Manager ("GM") who is ultimately responsible for the day-to-day operations of the entire restaurant.  (Uncontroverted Material Fact ("UMF") 1).  During the relevant period related to Plaintiff's employment, Rebecca Bailey was one of the RODs for the Irvine location and Adin Philleo was one of the GMs.  (UMF 2).  Each restaurant also has a Kitchen Manager, who is ultimately expected to be in charge of all kitchen operations.  (UMF 3).  The Kitchen Manager is expected to supervise the "heart of house" ("HOH") employees, which included cooks, expediters, and dishwashers, as well as all other restaurant employees when the Kitchen Manager is the manager on duty for the shift he or she works.  (UMF 4).

### B.   Kitchen Manager Duties

Pursuant to Red Robin's job description for the Kitchen Manager position, a Kitchen Manager is expected to "[s]upport and ensure that the restaurant operates within Red Robin International guidelines, while meeting/exceeding sales and profitability objections."  (UMF 5).  A Kitchen Manager is also expected to be "[r]esponsible for the proper execution and operation of the kitchen department, including all hiring/training of assistant kitchen managers and hourly team."  (UMF 6).  A Kitchen Manager's essential functions demonstrating Red Robin's expectations that he or she perform management duties include, but are not limited

2

to, the following:

- Effectively and efficiently manage restaurant . . .;

- Manage day to day operations during scheduled shifts that include daily decision making, Team Member support, Guest interaction, scheduling, planning while upholding standards, product quality and cleanliness;

- Optimize profit by scheduling labor efficiently and ordering food and supplies to maintain appropriate inventory . . .;

- Increase sales by ensuring Guest satisfaction and prompt problem resolution;

- Responsible for the selection, on boarding and retention of Team Members through motivation, recognition, coaching and development;

- Responsibly delegate and follow up on tasks while remaining accountable overall for kitchen and Team Members;

- Ensure [HOH] team avoid cross contamination, improper food handling and/or storage practices, etc., through proper training and supervision;

- Set performance expectations and monitor training process to ensure quality of training;

- Prepare and conduct performance appraisals and one to ones within assigned department and take any necessary disciplinary action in line with Company standards;

- Directly supervise 40-60 ["front of house" (FOH)/HOH] employees, and 2-5 trainers per shift.

(UMF 7).  Red Robin expects that Kitchen Managers perform these duties and oversee their shifts, typically as the primary manager on duty for the entire restaurant.  (UMF 8).  Kitchen Managers are not expected to spend any significant amount of time performing tasks that hourly employees are expected to perform ("Spends *__limited__* time performing all [FOH/HOH] functions including food preparation, cooking, cleaning, serving and greeting Guests.").  (UMF 9).

### C.    Plaintiff's Employment with Red Robin

Plaintiff was hired and began working as a Kitchen Manager in Training in or around June 24, 2008.  (UMF 10).  During the period of time relevant to Plaintiff's claims in the instant matter, Plaintiff was the Kitchen Manager of Red Robin's Irvine restaurant.  (UMF 11).  At the time of his termination, Plaintiff was earning a salary in the high $60,000 range per year plus quarterly bonuses.  (UMF 12).

### D.    Duties Plaintiff Was Expected to Perform as a Kitchen Manager

The primary task Plaintiff was expected to perform as a Kitchen Manager was to oversee the shifts he worked and ensure that the kitchen runs smoothly.  (UMF 13).  Plaintiff frequently was the primary manager on duty for the restaurant when he worked, which meant that he was expected to not only be responsible for overseeing the kitchen, but also supervising all restaurant employees and the operations of the entire restaurant.  (UMF 14).  As a result, Plaintiff would be managing and directing the work of both the FOH employees (i.e. servers, hosts) as well as the HOH employees (i.e. cooks, expediters, dishwashers) during his shift.  (UMF 15).

As a Kitchen Manager, Plaintiff was also expected to perform managerial duties, including, but not limited to, the following:

- Supervising, directing and coaching HOH (and FOH employees when he was primary manager on duty, which he regularly was) in the execution of their duties, including making notes about hourly employee performance in the Irvine restaurant's Action Log and having Ready, Set, Go meetings with hourly employees prior to the start of a shift (UMF 16);
- Walking throughout the restaurant to evaluate employee performance, customer satisfaction, and the overall operation of the restaurant (UMF 17);
- Inspecting and evaluating food to ensure quality and uniformity,

4

including performing a line check prior to the start of the shift (UMF 18);

-   Visiting guest tables to ensure quality service (UMF 19);

-   Monitoring employee compliance with various Red Robin policies, such as meal period policies, rest break policies, and food safety and sanitation policies (UMF 20);

-   Ensuring the health and safety policies for the kitchen and the entire restaurant were followed (UMF 21);

-   Ensuring the kitchen was properly staffed, monitoring labor costs, and phasing employees as necessary (UMF 22);

-   Recommending employees for hiring and firing (UMF 23);

-   Training employees (UMF 24).

Plaintiff acknowledged that as a Kitchen Manager he was expected to perform these managerial duties, although for some he disputes he actually did perform them "[b]ecause there was not enough time in the day." (UMF 25).

### E.    Plaintiff's Authority and Discretion

Plaintiff, like all other salaried managers, was expected to use his managerial and supervisory authority to run the shift by supervising, directing and coaching not only the HOH employees, but also the FOH employees as he was normally the manager on duty during the morning shifts he was scheduled to work.  (UMF 26). This necessarily included the authority to make decisions on behalf of Red Robin and the Irvine restaurant with respect to, for example, customer complaints, service problems, or food quality issues.  (UMF 27).  Plaintiff also was expected to exercise his independent judgment and discretion with respect to managing inventory and ordering food and supplies for the kitchen.  (UMF 28).

Plaintiff's authority also extended to kitchen staffing as he was expected to be primarily responsible for interviewing and hiring kitchen staff (i.e. cooks, expediters, dishwashers).  (UMF 29).  Plaintiff was also expected to discipline HOH employees (and had the authority to discipline FOH employees as well) by

5

1   verbal coaching or issuing write-ups.  (UMF 30).

2       Plaintiff also was expected to control staffing levels at the restaurant.  (UMF

3   31).  Plaintiff was expected to create the weekly schedules for the HOH employees

4   and determine the number of HOH employees needed for each shift.  (UMF 32).

5   If the restaurant was slow, for instance, Plaintiff was expected to exercise his

6   managerial discretion to "phase" (cut a shift short of what was scheduled)

7   employees.  (UMF 33).

8       **F.**    **Plaintiff Made No Complaints to Human Resources or Any**

9           **Governmental Agency That He Was Misclassified as Exempt**

10          **Prior to the Filing of the Instant Lawsuit**

11      Red Robin was not on notice that Plaintiff was deviating from Red Robin's

12  expectation that Plaintiff's primary duty as a Kitchen Manager was to perform

13  managerial duties concerning the kitchen, supervise both FOH and HOH

14  employees, and run the shift he was assigned smoothly and efficiently.  (UMF 34).

15  Plaintiff never complained to human resources that he was spending significant

16  amounts of time on non-managerial tasks despite having complained about two

17  other employment-related issues in the past.  (UMF 35).  Plaintiff also never

18  complained to any governmental agency that he was spending significant amounts

19  of time on non-managerial tasks.  (UMF 36).  Likewise, no other employee

20  indicated to Red Robin that Plaintiff was spending most of his time on non-

21  managerial tasks.  (UMF 37).  In fact, Plaintiff's supervisor, the Irvine GM, as well

22  as the Irvine restaurant's ROD, both believed that Plaintiff's primary duties were

23  to perform managerial duties concerning the kitchen, supervise both FOH and

24  HOH employees, and run the shift he was assigned smoothly and efficiently, and

25  neither of them observed him spending most of his time on non-managerial tasks.

26  (UMF 38).  Thus, Red Robin had no reason to believe that Plaintiff was non-

27  exempt, as he now alleges.

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
FPDOCS 34317772.1

### III.   <u>LEGAL STANDARD</u>

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate where there is "no genuine issue of material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party can move for summary judgment on all or only part of a claim. *See* Fed. R. Civ. P. 56(b). "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others." *Baker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990). Even if a party is not likely to prevail on one of its claims, "the Court may still grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. FDIC*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997).

Where the plaintiff has the burden of proof at trial, a defendant meets its burden on summary judgment merely by pointing to an absence of evidence supporting an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although certainly free to do so, the defendant need not affirmatively negate an element of the plaintiff's claim and need not present any evidence at all. *Id.* at 323. Rather, the defendant demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* (quoting Fed. R. Civ. P. 56(c)).

The plaintiff's burden in resisting summary judgment is more difficult. A plaintiff may not defeat summary judgment merely by relying on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the plaintiff prevail

7

merely by attacking or discrediting the defendant's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The plaintiff also may not avoid summary judgment by pointing to a "mere scintilla" of evidence; rather, the plaintiff must affirmatively present specific admissible evidence sufficient to enable a reasonable trier of fact to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff can do none of these things here with respect to the claims at issue, and as a result, Red Robin's motion should be granted.

## IV.   LEGAL ARGUMENT

### A.   Red Robin Is Entitled To Summary Judgment On Plaintiff's Claim For Waiting Time Penalties Pursuant To California Labor Code Section 203

Plaintiff asserts a claim for waiting time penalties under California Labor Code section 203. (*See* Docket No. 1-2, ¶¶ 43-46). An employer is liable for waiting time penalties ***only if*** it "willfully" fails to pay all wages upon discharge. Cal. Lab. Code § 203; *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). Even if Plaintiff ultimately can prevail on his claim that he was misclassified (which he cannot), his claim for waiting time penalties still fails because Red Robin did not "willfully" fail to pay Plaintiff's wages upon discharge as a matter of law.

#### 1. *California's Executive Exemption*

Employees falling under the executive exemption need not receive overtime pay or breaks. Executive employees earn a salary of twice the minimum wage,[1] direct two or more employees, have the authority to recommend changes in

---

[1]   To qualify for the executive exemption, an employee must earn a salary of twice the minimum wage, which is $11.00 per hour, $880 per week, $3,813.33 per month, and $45,760 per year in 2018. The minimum wage was less than these amounts prior to 2018 when Plaintiff was employed by Red Robin.

employment status, exercise discretion and independent judgment, and perform exempt (management) work most of the time.  Exempt work includes all work directly and closely related to managerial work and work used as a means to carry out exempt functions.  Wage Order 7-2001 § 1(A).  The California Supreme Court describes a two-step inquiry to determine exemptions: (1) examine the work actually performed to see how much was exempt; and if the exempt work is not in the majority, then (2) see if the work comports with realistic employer expectations.  *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 802 (1999).

### 2. Under California Labor Code Section 203, Plaintiff Must Prove Red Robin Lacked a Good Faith Basis to Dispute His Claim for Additional Pay.

As the California Supreme Court has recognized, where an employer has a reasonable, good faith belief that no wages were owed, the failure to timely pay upon termination is not "willful."  *Smith v. Rae-Venter Law Grp.*, 29 Cal. 4th 345, 354, fn. 3 and 4 (2002); *see also* 8 Cal. Code Regs., tit. 8, § 13520; *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due."); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) ("A good faith belief in a legal defense will preclude a finding of willfulness."); *Reber v. AIMCO / Bethesda Holdings, Inc.*, 2008 WL 4384147, *24, (C.D. Cal. 2008) (summary adjudication appropriate on Labor Code section 203 claim where good faith dispute existed whether employees were exempt) ([Because] "it is clear that a good faith dispute exists [as to whether plaintiffs were misclassified] . . . ., penalties under Section 203 are unwarranted").  A "good faith dispute" occurs when "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee."  8 Cal. Code Regs., tit. 8, § 13520.  Whether the defense ultimately is successful is inconsequential.  *Id.*

As long as there is no evidence that the employer acted in bad faith and it presents a good faith defense based in law or fact, "willfulness" cannot be established.  *See Amaral v. Cintas Corp.,* 163 Cal. App. 4th 1157, 1203 (2008). Even if the employer's legal defense is ultimately rejected by the court, that defense prevents a finding of willfulness if made in good faith.  *See id.* at 1201-02.  A plaintiff bears the burden of proving that an alleged violation of Section 203 is "willful."  *See Wong v. Pape Machinery, Inc.,* 2009 WL 937481, at *11 (E.D. Cal. Apr. 7, 2009); *Amaral*, 163 Cal. App. 4th at 1203.

### 3.  *Red Robin Had a Good Faith Belief that It Had Paid All Compensation Due When Plaintiff's Employment Terminated.*

Red Robin had a good faith belief that it paid all compensation due to Plaintiff upon termination of his employment based on his exempt classification during the time he worked as a Kitchen Manager.  Plaintiff acknowledged that in his role as a Kitchen Manager, he was primarily expected to perform managerial duties concerning the kitchen, supervise both FOH and HOH employees, and run the shift he was assigned smoothly and efficiently.  (UMF 13-25).  The testimony of the defense witnesses also confirm that as a Kitchen Manager Plaintiff was primarily expected to perform managerial duties concerning the kitchen, supervise both FOH and HOH employees, and run the shift he was assigned smoothly and efficiently.  (UMF 4-25).  Plaintiff also was expected to use his discretion and judgment regarding significant matters and Red Robin conveyed its expectation that he spend most of his time on these managerial duties.  (UMF 26-33).  Neither Plaintiff nor any other Red Robin employee raised the possibility that Plaintiff was not spending most of his time managing.  (UMF 34-38); *see Armenta,* 135 Cal. App. 4th at 326 (finding that employer lacked good faith belief that employees were properly paid when employees complained about non-payment and employer responded that they would not be paid).  Thus, Red Robin had a good faith basis to

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
FPDOCS 34317772.1

believe that Plaintiff spent most of his time performing the expected managerial duties of a Red Robin Kitchen Manager and was therefore exempt from overtime pay requirements.

Moreover, even if it were later determined that Plaintiff was not exempt while he was a Kitchen Manager at the Irvine restaurant, Red Robin's reasonable belief that he was when his employment terminated would suffice to prevent recovery of Labor Code section 203 penalties. *See Barnhill,* 125 Cal. App. 3d at 8 (holding that employer does not owe waiting time penalties, even when it ultimately owed unpaid compensation, based on its good faith belief that such compensation was not due).

### 4. Plaintiff Cannot Satisfy His Burden to Demonstrate that Red Robin Acted Willfully Under Labor Code Section 203.

Plaintiff cannot meet his burden of raising a triable issue of material fact showing that Red Robin's belief that he was exempt was "unsupported by any evidence" or in bad faith.  Cal. Code Regs., tit. 8, § 13520.  There is evidence supporting Red Robin's belief that Plaintiff was exempt as a Kitchen Manager of the Irvine restaurant.   The position required the performance of significant managerial duties and Red Robin articulated its expectation that Plaintiff spend a majority of his time performing those duties (UMF 4-26).  Thus, there is at least *some* evidence that Plaintiff was exempt.

Likewise, Plaintiff cannot establish that Red Robin's belief was in bad faith. The undisputed facts demonstrate that Plaintiff never indicated that he was spending a majority of his time on non-managerial tasks (UMF 35) and no Red Robin employee reported as much (UMF 37).  Plaintiff has presented no evidence that Red Robin knew that he was spending a majority of his time performing non-managerial, nonexempt tasks.  Plaintiff's claim of waiting time penalties pursuant to California Labor Code section 203, therefore, cannot survive partial summary judgment.

**B.    Plaintiff's FLSA Claim Cannot Extend Beyond The Two-Year Limitations Period Because There Is No Evidence Of Any Willful Violation.**

The statute of limitations for a claim seeking unpaid overtime wages under the FLSA is generally two years, but extends to three years if the claim is "arising out of a willful violation." 29 U.S.C. § 255(a). "Willful" behavior is conduct that is more than simply negligent or unreasonable. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also Nelson v. Waste Mgmt. of Alameda Cnty, Inc.*, 33 Fed. Appx. 273, 274 (2002) ("Mere negligence by the employer in determining its legal obligation is not sufficient; there must be evidence that the employer affirmatively knew it was violating the FLSA or that it was acting with 'reckless disregard' of the FLSA") (quoting *McLaughlin*, 486 U.S. at 135 n.13).   An employer's violation of the FLSA is "willful" only if the employer either knew or acted with reckless disregard for whether its conduct was prohibited by the FLSA. *See McLaughlin*, 486 U.S. at 133; *Chao v. A-One Med. Servs., Inc.*, 346 F. 3d 908, 918 (9th Cir. 2003).   "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful. *Id.* at 135 n.13.   Although normally in a summary judgment motion all evidence is construed in favor of the nonmoving party, Plaintiff has the burden on a FLSA claim to show that the alleged violations are willful. *See Nelson*, 33 Fed. Appx. at 274; *see also Sherman v. Premium Concrete Cutting, Inc.*, 2004 WL 1510030, at *3-4 (N.D. Ill. July 6, 2004); *see also Adams v. U.S.*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("[u]nlike good faith, the employee bears the burden of proving the willfulness of the employer's FLSA violation").

### 1. The FLSA Executive Exemption

Employees qualifying for the executive exemption are (1) salaried, (2) have a primary duty that consists of managing the enterprise or a customarily recognized department, (3) regularly direct the work of two or more employees, (4) have

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
FPDOCS 34317772.1

weight given to his suggestions regarding hiring and firing, and (5) regularly exercise discretionary power.  29 C.F.R. § 541.100.

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).  Unlike state-law requirements, the time performing exempt tasks is not determinative and an employee may be exempt even if he spends most of his time on nonexempt work. 29 C.F.R. § 541.700(a); *see, e.g., Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) (employee may be exempt even while spending most of time on performing nonexempt work); *Donovan v. Burger King Corp.*, 672 F.2d 221, 226-27 (1st Cir. 1982) (assistant manager had management as their primary duty even though he spent a "majority of his time performing nonexempt work); *Musgraves v. Sears Holding Mgmt. Corp.,* No. 11-0625, 2012 WL 3222905, *12 (C.D. Cal. July 19, 2012) (manager was found exempt even though he testified that he spent 52% to 86% of his time performing non-exempt tasks); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1331-35 (N.D. Ga. 2005) (assistant managers found exempt even though they testified that they spent between 60% and 90% of their time performing nonexempt tasks, such as stocking, cleaning and running the registers, because while performing nonexempt tasks, they oversaw other employees and made sure the store operated smoothly).

Thus, the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).  Factors a court may consider include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

///

Examples of managerial work include: training employees, setting hours of work; planning work; determining techniques to be used, apportioning work among workers; directing work; handling workers' complaints and disciplining where necessary; controlling the flow and distribution of materials, merchandise or supplies; and providing for the safety of workers and the employer's property. 29 C.F.R. §541.102.

Discretionary tasks include training and supervising employees, ordering merchandise, handling customer complaints and safeguarding cash receipts. *Donovan*, 675 F.2d at 521-22 (assistant manager exercised discretion by moving employees from task to task, ensuring employees performed their jobs, representing manager in dealings with employees, ordering supplies based on future sales, dealing with the public, and handling cash or inventory irregularities); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 619 (8th Cir. 1991) (discretionary powers include training and supervising employees, handling customer complaints, and safe-guarding cash receipts).

### 2.  *Plaintiff Must Prove That Red Robin Acted Willfully*

An employer acts willfully for the purposes of the FLSA statute of limitations if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."[2] *McLaughlin*, 486 U.S. at 133; *SEIU, Local 02 v. Cnty of San Diego*, 60 F.3d 1346, 1356 (9th Cir. 1994).

Under this standard, an FLSA plaintiff seeking to invoke the three-year limitations period has the burden of proof. *See Adams*, 350 F.3d at 1229; *Sherman*,

---

[2]  In interpreting the term "willful," the Court expressly rejected two other tests: the *Jiffy June* test that asked only whether the employer knew the Act "was in the picture," *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1972), and another test that asked if the employer acted unreasonably in believing it was complying with the statute. *McLaughlin*, 486 U.S. at 134.

14

2004 WL 1510030, at *3-4.  Thus, a plaintiff cannot survive a motion for summary judgment unless he "make[s] a competent demonstration that there [is a] trialworthy issue as to whether [the employer] 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *See Lopez v. Corporacion Azucarera de P.R.*, 938 F.2d 1510, 1515-16 (1st Cir. 1991) (quoting *McLaughlin*, 486 U.S. at 133).  Mere awareness that the FLSA might apply is insufficient to establish a willful violation.  *See Schneider v. City of Springfield*, 102 F. Supp. 2d 827, 836 (S.D. Ohio 1999) (finding "absolutely meritless" the plaintiff's arguments that an employer's conduct is willful "when it knows its actions possibly might violate the FLSA," "realizes that the FLSA might apply," or that the "FLSA is in the picture").  Likewise, close questions of law and fact weigh against a finding of willfulness.  *See Reich v. Gateway Press, Inc.*, 12 F.3d 685, 703 (3d Cir. 1994).  Even a finding of no good faith for purposes of liquidated damages would not mandate a finding of willfulness for purposes of the FLSA's statute of limitations. *See Rodriguez v. Farm Stores Grocery*, 518 F.3d 1259, 1273-74 (11th Cir. 2008).  Thus, Plaintiff's burden proof is substantial.

### 3. *Plaintiff Cannot Prove That Red Robin Acted Willfully*

Red Robin established the Kitchen Manager position as a managerial position for its restaurants and employed its Kitchen Managers to perform managerial duties concerning the kitchen, supervise both FOH and HOH employees, and run the shift they were assigned smoothly and efficiently.  As with all Kitchen Managers, Red Robin expected that Plaintiff use his discretion and judgment regarding significant matters and Red Robin conveyed its expectation that he spend most of his time on these managerial duties.  (UMF 4-33).  It was expected that Plaintiff would primarily spend his time performing a wide range of significant managerial tasks, including but not limited to:

- supervising, directing and coaching HOH (and FOH employees when he was primary manager on duty, which he regularly was) in the execution

of their duties, including making notes about hourly employee performance in the Irvine restaurant's Action Log and having Ready, Set, Go meetings with hourly employees prior to the start of a shift (UMF 16);

- walking throughout the restaurant to evaluate employee performance, customer satisfaction, and the overall operation of the restaurant (UMF 17);

- inspecting and evaluating food to ensure quality and uniformity, including performing a line check prior to the start of the shift (UMF 18);

- visiting guest tables to ensure quality service (UMF 19);

- monitoring employee compliance with various Red Robin policies, such as meal period policies, rest break policies, and food safety and sanitation policies (UMF 20);

- ensuring the health and safety policies for the kitchen and the entire restaurant were followed (UMF 21);

- ensuring the kitchen was properly staffed, monitoring labor costs, and phasing employees as necessary (UMF 22);

- recommending employees for hiring and firing (UMF 23);

- training employees (UMF 24).

Red Robin expected that Plaintiff would exercise considerable discretion and judgment in performing these managerial duties.  (UMF 26-33).  Neither Plaintiff nor any other Red Robin employee raised the possibility that Plaintiff was not spending most of his time managing.  (UMF 34-38).  Thus, Red Robin had a good faith basis to believe that Plaintiff spent most of his time performing the expected managerial duties of a Red Robin Kitchen Manager and was therefore exempt under the FLSA.

Here, there is no evidence to support that Red Robin knew they were violating the FLSA, or that they recklessly disregarded the FLSA.  To the contrary, the uncontroverted facts demonstrate that Plaintiff was properly classified or, at the

very least, that Red Robin acted in good faith in its belief that Plaintiff was properly classified.  Red Robin's good faith belief is incompatible with the allegations that Red Robin willfully violated the FLSA.  Accordingly, Red Robin is nevertheless entitled to partial summary judgment that the limitations period for any FLSA claims is limited to two years.

### C. Plaintiff Is Not Entitled To Liquidated Damages Because Red Robin Acted In Good Faith And Had Reasonable Grounds For Believing That It Was Complying With The FLSA

The FLSA provides for an award of liquidated damages in an amount equal to unpaid overtime compensation.  29 U.S.C. § 216(b).  However, courts retain discretion to withhold a liquidated damages award where an employer shows that, "despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003); *see also* 29 U.S.C. § 260.

Here, Red Robin clearly had a good faith and reasonable grounds for believing that Plaintiff was exempt under the FLSA.  As discussed above, Plaintiff performed work related to Red Robin's general business operations, engaged in matters of significance to Red Robin and its customers, and regularly exercised discretion and independent judgment.  As a result, Red Robin acted in good faith in believing that Plaintiff satisfied multiple overtime exemptions.  Accordingly, pursuant to 29 U.S.C. section 260, Plaintiff does not have a viable claim for liquidated damages.

### V. CONCLUSION

The undisputed facts demonstrate that Plaintiff cannot establish that Red Robin willfully violated the California Labor Code section 203 because Plaintiff cannot prove that Red Robin knew or recklessly disregarded the possibility that he was misclassified as exempt.  Likewise, Plaintiff cannot establish a willful violation

under the FLSA for the same reasons.  Red Robin expected that Plaintiff, as a Kitchen Manager, would exercise considerable discretion and perform significant managerial responsibilities to ensure the profitable operations of the Irvine restaurant.  Red Robin expected that Plaintiff would spend most of his time on managerial and closely related duties and Plaintiff never notified Red Robin that he was defying that expectation.  For these reasons, Red Robin had a good faith belief that Plaintiff was properly classified as exempt from state and federal overtime pay requirements.  As such, Red Robin did not willfully violate the FLSA or California Labor Code section 203.  For the above reasons, Red Robin requests that this Court dismiss Plaintiff's claims for waiting time penalties pursuant to California Labor Code section 203 and liquidated damages pursuant to the FLSA with prejudice and limit Plaintiff's FLSA claim to a two-year limitations period.

Dated:  July 23, 2018                             Respectfully submitted,

FISHER & PHILLIPS LLP


By: */s/ Sean F. Daley*
LONNIE D. GIAMELA
SEAN F. DALEY
Attorneys for Defendant
RED ROBIN INTERNATIONAL,
INC.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
FPDOCS 34317772.1

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; am employed with Fisher & Phillips LLP and my business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On July 23, 2018 I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RED ROBIN INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

Jonathan Jackel                          Attorney for Plaintiff
Nora Rousso                              Marciano Topete
Rousso & Jackel
116 E. Campbell Avenue, Suite 2          Tel: (408) 378-3200
Campbell, California 95008               Fax: (408) 378-3202
                                         jonathan@roussojackel.com
                                         nora@roussojackel.com

☒   **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐   **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express. Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☐   **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with Network Express, whose business address is 1533 Wilshire Boulevard, Los Angeles, CA 90017.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed July 23, 2018 at Los Angeles, California.

Melody Martinez                          By:  /s/Melody Martinez
_____                    _____
Print Name                                        Signature

FPDOCS 34317772.1