1 | JONATHAN JACKEL (129146)
  | NORA ROUSSO (150275)
2 | ROUSSO & JACKEL
  | 116 E. Campbell Ave., Suite 2
3 | Campbell, California 95008

4 | Telephone: (408) 378-3200
  | Facsimile:  (408) 378-3202

5 |
  | Attorneys for Plaintiff
6 | MARCIANO TOPETE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

MARCIANO TOPETE,

    Plaintiff,

vs.

RED ROBIN INTERNATIONAL, INC., a Nevada Corporation, doing business as RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1 through 20, inclusive,

    Defendants.

CASE NO. 8:17-CV-01721 AG (JDEx)
*[Originally Orange County Superior Court Case No.: 30-2017-00930423-CU-OE-CJC]*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*[Filed concurrently with Declarations of Marciano Topete, Erik Carpenter, and Jonathan Jackel, Plaintiff's Opposition to Plaintiff's Separate Statement of Uncontroverted Facts, Plaintiff's Statement of Genuine Disputes, and Plaintiff's Compendium of Exhibits]*

Date:     August 20, 2018
Time:     10:00 a.m.
Location: Courtroom 10D

Complaint Filed: July 7, 2017
FAC Filed:       July 27, 2017
Trial Date:     October 2, 2018

**TABLE OF CONTENTS**

**I. INTRODUCTION**...................................................................................................1

**II. STATEMENT OF FACTS**......................................................................................2

**III. LEGAL ARGUMENT**...........................................................................................6

    A. LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT.............6

    B. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WAITING TIME PENALTIES UNDER LABOR CODE SECTION 203......................................................................7

    C. DEFENDANT IS NOT YET ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE THREE YEAR STATUTE OF LIMITATIONS FOR ITS WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT..................................................................................................................10

    D. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR LIQUIDATED DAMAGES UNDER THE FAIR LABOR STANDARDS ACT.................................................................13

    E. DEFENDANT HAS NOT COMPLIED WITH THE LOCAL RULES GOVERNING THE FILING AND SERVICE OF MOTIONS FOR SUMMARY JUDGMENT......................................................................................14

**IV. CONCLUSION**....................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

                                                      **PAGES**

McLaughlan v. Liu,
    849 F.2d 1205 (9th Cir. 1988)..................................................................7

Celotex v. Corp. v. Cutrett,
    477 U.S. 317............................................................................................6

McLaughlan v. Richland Show Co.,
    486 U.S. 128..........................................................................................10

Ramirez v. Yosemite Water Co.,
    20 Cal. 4th 785 (1999)..........................................................................7, 8

Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers,
    2c. (2002) 102 Cal. App 4th 765............................................................9

Boyd v. Bank of America Corp.,
    109 F.Supp3d 1273 CC. D. Cal. (2015)................................................9

Herman v. RSR Security Services, LTD.,
    172 F.3d 132 (2nd Cir. 1999)...........................................................10, 13

Heyman v. Safeway Inc. 21b Cal. App. 4th (2013)

Alvarez v. IBP, Inc.,
    339 F.3d 894 (9th Cir. 2003)................................................................13

Reih v. Southern New England Telecommunications Corp.,
    121 F.3d 58 (2nd Cir. 1997).................................................................14

**STATUTES**
Labor Code § 203...........................................................................................9, 10
Labor Code § 201................................................................................................10
29 U.S.C. § 216...................................................................................................13
29 U.S.C. § 260...................................................................................................14

**REGULATIONS**
Wage Order 5-2001..........................................................................................7, 8
29 C.F.R. 541. 700...............................................................................................10
29 C.F.R. 541. 102...............................................................................................11
29 C.F.R.

**LOCAL RULES**
Local Rule 7-3.....................................................................................................14
Local Rule 6-1.....................................................................................................15
Local Rule 5-3.2.1...............................................................................................15
Local Rule 5-3.2.3...............................................................................................15
Local Rule 7-9.....................................................................................................16

# I. INTRODUCTION

Defendant Red Robin International, Inc's ("defendant") motion for partial summary judgment seeks the disposition of of plaintiff Marciano Topete's ("plaintiff") claims for waiting time penalties under the California Labor Code and liquidated damages under the Fair Labor Standards Act ("FLSA") based on its claim that its classification of plaintiff as an exempt manager was in "good faith." It also asks for a determination that plaintiff's claims under the FLSA are subject to a two year statute of limitations based on its claim that the classification was not "willful." These claims are primarily based on defendant's written description of a kitchen manager's duties and its subjective expectation that plaintiff would spend "most of his time" on management duties requiring "discretion" and "independent judgment." However, defendant offers no evidence of these "expectations" being communicated to plaintiff and disregards evidence that plaintiff spent most of his time on non-exempt duties. Defendant also disregards evidence that its expectations were not realistic.

Classification of an employee as exempt under California law uses a quantitative test to determine whether an employee's "primary duties" involve exempt work. An employer must prove that the employee spent more than half their time on exempt duties. Defendant cannot do this, so it claims it is a "two step" inquiry, with the second step being whether it comports with the employer's "realistic expectations." This is a misinterpretation of California law. The employer's expectations are merely a consideration. They cannot be used to override a finding that an employee spent more than half of their time on non-exempt duties. Both conderations must be weighed against each other.

Defendant cannot show "good faith" under the FLSA either. Although the FLSA applies a qualitative test to determine whether an employee's "primary duty," a finding of "good faith" requires that the employer engage in some kind of activity before or during the employee's employment to ensure that they are properly classified as exempt. Defendant offers no evidence that it has ever done this.

Plaintiff submits evidence showing that defendant's misclassification of him as exempt under the FLSA was "willful." Feberal regulations describe the different types of activities that are

considered "management." They also state that the amount of time spent doing exempt work is a "useful guide." Defendant's evidence only shows that plaintiff engaged in a fraction of these types of activities, without any consideration of the amount of time spent on exempt versus non-exempt duties. It ignores evidence that plaintiff spent most of his time in the kitchen doing exempt work as a result of the restaurant being understaffed. Plaintiff's primary duty was getting the food out of the kitchen in a timely manner the way defendant wanted it and saving money on labor costs. Defendant's subject belief that plaintiff was exempt is not enough. It disregarded the possibility the plaintiff was misclassified. This supports a finding of willfulness under the FLSA.

There are triables issue of fact over whether defendant acted in good faith and whether its classification of plaintiff as exempt was willful. Partial Summary Judge is not warranted under these circumstances.

## II. STATEMENT OF FACTS

Plaintiff's title was "Kitchen Manager" but he managed few employees (only cooks and dishwashers). Because he usually "opened" the restaurant and because he typically worked Thursdays-Mondays, with Tuesday-Wednesday as his days off, he was only the "manager on duty" for part of his shift, two or three days per week. The general manager came in early on Mondays in order to do inventory along with plaintiff, which took 4-6 hours, and the assistant managers came in earlier on the weekends. (Exhibit A to Compendium of Exhibits/Depo of Plaintiff/68:8-69:1, 95:8-18, 96:5-12, 221:3-6.) (All Exhibits referred to hereafter are attached to the Compendium of Exhibits.)

In addition, plaintiff's shift usually started at 7 a.m. and none of the "Front of House" ("FOH") employees showed up until around 11 a.m. when the restaurant opened for business. The assistant managers usually started no later than 3 p.m. on weekdays, so plaintiff was only the "manager on duty" from 8 - 12 hours each week. (Declaration of Marciano Topete para. 6; Ex. 1/ Depo. Of Plaintiff, 68:8-69:1, 95:8-18, 96:5-12, 221:3-6.)

Even when plaintiff was the "manager on duty" he still spent most of his time working in

the kitchen cooking, doing dishes, or doing "expo," the process of arranging and plating the food. Defendant claims it didn't know how much time he spent on any particular duty. (Exhibit 4/Depo. of Karin Davie [1] 16:6-8; 48:11-24; 53:25-54:4; ). This is unhelpful to Red Robin, because it knew that the Red Robin "Employee Handbook," which included a "California Addendum," essentially specified that what an employee like plaintiff **did** was more important than his **title**. (Exhibit 5 (Handbook/Addendum)  (Exhibit 4/Depo of Karin Davie, 74:9-14; Exhibit 5.)   Defendants knew or should have known what he was doing.

Davie also testified that plaintiff had to spend "more than half of his time doing exempt work in order to be classified as exempt under California law." (Exhibit 4/Depo. of Karin Davie, 13:18-14:3, 31:7-19.)  She acknowledged Red Robin's policy that an employee's status as exempt was not just based on the job description.  It was also based on "**executing** the job description." (Id., 75:7-22.)

Because Defendant's Employee Handbook specified that what plaintiff did was more important than his title (Exhibit 5), Defendant knew that it needed to know what plaintiff was doing and not merely what was "expected" based on his "job description."  Despite this, defendant offers no evidence of anything it did to determine the amount of time plaintiff spent on exempt duties.

Defendant also devotes a lot of time to its argument that plaintiff never complained, but offers no explanation as to the relevance of this.  It also ignores an email in which it was reported that plaintiff had complained about being forced to do hourly work. (Exhibit 7.)

Plaintiff spent less than half of his time exercising discretion and independent judgment. He had no discretion as to items on the menu; the menu is the same for customers across the country. "The guests need to have the same Red Robin experience whether they're in Maine, North Carolina or Irvine." (Exhibit 4/Depo. of Davie, 88:6-8).   He had no independent judgement or discretion with respect to managing inventory and ordering food and supplies for the kitchen. (Ex. 1/Depo. of Plaintifff, 39:9-18, 138:18-140:18; Ex. 3/Depo. of Rebecca Bailey, 53:5-23, 172:2-8; Ex. 4/Depo. Of

---

[1] Karin Davie, was the witness designated by defendant as the "person most knowledgeable" with respect to defendant's decision to classify plaintiff as exempt.  However, she was not involved in defendant's decision to classify plaintiff as exempt. (Exhibit 4, Davie Depo., 30:24-31:2, 56:14-57:3.)

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT                Page 3

1  Karin Davie, 47:25-48:10, 50:6-15; Declaration of Plaintiff, para. 5.)

2        The same goes for how food was prepared.  Every step of the process was controlled by
3  specifications contained in the "Pocket Pal,"[2] described by Rebecca Bailey as "the Bible" and by
4  Davie as "the coach."  The Pocket Pal includes standards for cleaning, storing food, and recipes.  It
5  specifies the exact proportions for every item on the menu. (Exhibit 3/Depo. of Rebecca Bailey,
6  15:20-16:6; Exhibit 4, Depo. Of Karin Davie, 86:19-88:8.)

7        Plaintiff did not train employees: Irvine was not a training store. (Exhibit 4, uDepo. of
8  Davie, 81: 20; Depo. Of Plaintiff, 98:1-6, 117:1-21, Declaration of Plaintiff, para. 4.)

9        The kitchen was chronically understaffed so plaintiff spent most of his time performing
10 the same tasks as hourly employees. The constant need to do physical labor was documented by
11 defendant's Workers' Compensation Administrator who stated plaintiff was expected to "lift" and
12 "push/ pull up to 25 lbs. Frequently - up to 6 hours per day." (Declaration of Marciano Topete,
13 paragraph 3; Exhibit 1/Depo. of Plaintiff, 53:111-54:20, 55:7-20, 112:24-114:7; Exhibit 6.)

14       Plaintiff's primary duty was making sure that all of the food got out of the kitchen the way
15 Red Robin wanted it, in a timely manner, while saving money on labor costs.  Although plaintiff was
16 responsible for scheduling "Heart of House" ("HOH") team members, he was limited by the budget
17 provided to him by the general manager.  The budget was not large enough to fully staff the kitchen.
18 This was because defendant wanted labor costs reduced in accordance with the projections created
19 by the "Watson" computer program.   Plaintiff was expected to make up the difference by doing the
20 same hourly jobs as other kitchen employees.  Otherwise, he would have hired additional staff to
21 work in the kitchen or have the people already working in the kitchen work longer hours.  (Topete
22 Declaration, para. 3; Exhibit 4/Depo. Of Karin Davie, 83:11-84:14.)

23

24       Plaintiff worked approximately 55 hours per week.  This means that there was another
25 manager present most of the time that plaintiff was working. (55 hours minus 8 to 12 hours equals

---

[2]The Pocket Pal was produced by defendant in discovery.  It is marked "confidential" pursuant to a protective order, so it cannot be submitted without plaintiff filing an application for permission to file it under seal.  Plaintiff does not believe it is necessary to do so, since the witnesses testified about it extensively.

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT      Page 4

43 to 47 hours.) The kitchen at the Red Robin in Irvine was not hidden from view, so the general manager and assistant managers could easily see what plaintiff was doing. (Topete Declaration, para. 8.) Erik Carpenter was one such assistant manager from the middle of 2013 until early 2014. After leaving the Red Robin in Irvine he worked as an Assistant Manager at the Red Robin restaurant located in Santa Ana, California until March of 2015. (Declaration of Erik Carpenter, para. 1.) Mr. Carpenter usually worked the mid-day shift or the late shift and had many opportunities to see Mr. Topete working. He observed plaintiff spend most of his time working on the line in the kitchen when their shifts overlapped. (Id., Para. 2.)

While Mr. Carpenter was employed by Red Robin as an assistant manager at its Irvine location and later at its Santa Ana location, all managers were expected to work all of the hourly positions in the restaurant in order to ensure that guests were served their food and drink orders in a timely manner. Red Robin expected managers to do everything they could to serve guests quickly and to ensure that food and drink were prepared according to Red Robin's specifications. As a result of hours of non-exempt employees being reduced, Mr. Carpenter also spent more than half of his time doing hourly work, including bartending, serving, bussing, and expo. He personally observed Mr. Topete spend the majority of his time cooking and working expo while they worked together. (Id., para. 3.)

Despite defendant's classification of plaintiff as exempt, the earnings statements it provided to him each state he worked "80 hours" every two weeks, except for pay periods in which he was on vacation, was out sick, or was on limited duty. The earning statements for those periods show him working less than 80 hours. As of December of 2015, defendant started using a payroll system that showed plaintiff's hourly rate. (Topete Declaration, para. 9, Exhibit 10.)

Red Robin's motto is that it gives its guests "the gift of time." "The Kitchen is expected to get the food out fast." (Exhibit 4/Depo. Of Karin Davie, 54:7-13.) Despite this, defendant wanted to keep labor costs down. (Id./83:11-84:14.) It knew that from "time to time" plaintiff had to step in to cook and wash dishes so they could **"deliver on their promises to guests."** There were times when any of the managers had to step in to cook for a little bit to help the team. Even the General

1  Manager had to step in from time to time to wash dishes.  (Id./52:25-53:4, 53:19-24.)  Defendant
2  also knew from the "Captain's Log"[3] that plaintiff had physically clean up in the kitchen and help out
3  on at least one occasion on his day off when the restaurant was understaffed.  (Exhibit 4/Depo. of
4  Karin Davie, 89:16-92:17.)
5      Defendant claims that one of plaintiff's "management" duties was to "phase" employees by
6  sending them home before the end of their shifts if business slowed down.  This required very little,
7  if any discretion by plaintiff, since the General Manager usuall directed plaintiff
8  the employees generally left in the order in which they came to work.  This resulted in plaintiff
9  having to do the work of the hourly employees when the restaurant got busy again before the next
10 shift.  This included doing the work of the cooks, expo, and even serving food.  (Declaration of
11 Plaintiff; 7; Exhibit 1/Depo. of Plaintiff, 84:1-24.)

### III. LEGAL ARGUMENT

**A.    LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT**

15     Defendant relies on *Celotex Corp. V. Catrett,* 477 U.S. 317, 323, stating it need not present
16 any evidence if it demonstrates "an absence of a genuine issue of fact."  However, this is not a case
17 in which the plaintiff has no evidence to support his claims.  He has submitted declarations and
18 deposition testimony supporting his claim that he spent more than half of his time doing the same
19 work as hourly employees and that his "primary duty" was making sure that all of the food got out of
20 the kitchen, the way Red Robin wanted, in a timely manner, and saving money on labor costs.
21 Plaintiff's work was not hidden from view.  As a result, his evidence supports a finding that Red
22 Robin knew or should have known that plaintiff spent most of his time doing non-exempt work and
23 that his "primary duty" was getting the food out of the kitchen the way Red Robin wanted it, in a
24 timely manner and saving money on labor costs.
25     In ruling on a motion for summary judgment the Court must view the evidence in a light

---

[3] The Pocket Pal was alos produced by defendant in discovery and is marked "confidential" pursuant to a protective order, so it cannot be submitted without plaintiff filing an application for permission to file it under seal.  Plaintiff does not believe it is necessary to do so, since one of the witnesses testified about it.

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT                         Page 6

1  most favorable to the non-moving party. *McLaughlain v. Liu,* 849 F. 2d 1205, 1205 (9th Cir. 1988.)
2  The Court may also draw inferences in a light most favorable to the non-moving party based on
3  underlying facts that are **or** are not in dispute. *Ibid.* As a result, Red Robin cannot blind itself to
4  what was there to be seen by claiming that plaintiff was "expected" to spend most of his time doing
5  exempt management work without any explanation for ignoring the amount of time plaintiff spent
6  doing non-exempt work. Moreover, defendant's "expectations" mean nothing unless they were
7  "realistic."

**B.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WAITING TIME PENALTIES UNDER LABOR CODE SECTION 203.**

Defendant's claim that it is not liable for waiting time penalties under Labor Code Section 203 by misstating the standards for determine whether the executive exemption. The standard for determining whether a kitchen "manager" can be exempt as an executive under the California Labor Code is found in Section 1(B)(1) of Wage Order 5-2001. It requires an employer to prove the following:

(a) The employee's duties and responsibilities involve management of the enterprise or a customarily recognized department of that enterprise; and
(b) The employee customarily and regularly directs the work of two or more other employees; and
(c) The employee has the authority to hire or fire other employees or their suggestions and recommendations are given "particular weight;" and
(d) The employee customarily and regularly exercises discretion and independent judgment; and
(e) The employee is "primarily" engaged in duties which meet the test of the exemption.

Section 2(O) of Wage Order 5-2001 defines "primarily" as "more than one-half of the employee's time.

Defendant relies on *Ramirez v. Yosemite Water Co.*(1999) 20 Cal. 4th 785, 802, claiming there is a "two step inquiry" for determining the exemption: (1) examine the amount of time spent on exempt work; and (2) if it is not "in the majority," then "see if it comports with realistic employer expectations." (Defendant's Memorandum of Points and Authorities, 9:4-8.) The problem is that *Ramirez* does not frame the analysis as a "two step inquiry." Red Robin also ignores the requirement

that its expectations be "realistic."

*Ramirez* explains that the quantitative test set forth in the Wage Order is not simply a matter of determining the number of hours, then determining the employer's expectations. It is a matter of weighing both considerations:

> Having recognized California's distinctive quantitative approach to determining which employees are outside salespersons, we must then address an issue implicitly raised by the parties that caused some confusion in the trial court and the Court of Appeal: Is the number of hours worked in sales-related activities to be determined by the number of hours that the employer, according to its job description or its estimate, claims the employee *should* be working in sales, or should it be determined by the actual average hours the employee spent on sales activity? The logic inherent in the IWC's quantitative definition of outside salesperson dictates that neither alternative would be wholly satisfactory. On the one hand, if hours worked on sales were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in sales activities during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption. A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the *realistic* requirements of the job. In so doing, **the court should consider, first and foremost, how the employee actually spends his or her time**. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and **whether these expressions were themselves realistic given the actual overall requirements of the job**. *Ramirez v. Yosemite Water Co., supra,* 20 Cal. 4th at 801-801.

This explanation is consistent with Subsection 1(B)(1)(e) of Wage Order 5-2001: "The work actually performed by the employee during the course of the work week must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic expectations of the job, shall be considered in determining whether the employee satisfies this requirement." It is not a "two step process" where an employer can prove the exemption with evidence of its "expectations."[4] It is a weighing of two considerations, which is very difficult for a court in a motion for summary judgment. This is presumably why defendant is not asking the court to grant summary judgment on plaintiff's overtime claim. Defendant's claim that it "acted in good faith" is equally problematic.

---

[4] Most of the purported "facts" about defendant's "expecatations are unsupported by the deposition testimony cited in its Separate Statement of Uncontroverted Facts and/or based on misstatements of the deposition testimony. (See: Plaintiff's Opposition to Defendant's Separate Statement of Uncontroverted Facts.)

Defendant claims plaintiff must "prove that defendant lacked a good faith belief" that plaintiff was exempt. This is based on the premise that waiting time penalties depend on a finding of a "willful" violation and that a finding of "good faith" "precludes" a finding of willfulness. Although plaintiff has the burden of proving willfulness at trial, "good faith" is still an affirmative defense, so defendant has the burden of proving this in its motion.

"Willful" under Labor Code Section 203 means an employer intentionally failed or refused to perform a required act. *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal. App. 4th 765, 781. "It does not mean that the employer's refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workers of wages which the employer knows to be due." *Ibid*. As a result, it is the employer's failure or refusal to pay wages owed to employee that makes it "willful." Nonetheless, "[a]n employer's good faith mistaken belief that wages are not owed may negate a finding of willfulness." *Id.* at 782.

In *Boyd v. Bank of America Corp.,* 109 F. Supp.3d 1273, 1312, it was specifically held that a "defendant's bare assurance that they really believed that [an] exemption[s] applied... is insufficient to prevail on summary judgment." This is less than what we have here. There is no evidence from defendant that it even "believed" that plaintiff was exempt while it employed him. Defendant would have the court believe that it acted in "good faith," based on its "subjective expectations," regardless of whether they were communicated to plaintiff, whether they were realistic, and without considering the evidence that plaintiff spent most of his time doing non-exempt work. Defendnt knew that classifying plaintiff as exempt under California law required that he spend more than half his time on exempt duties. There is no evidence that it ever tried to make this determination. Accordingly, whether defendant acted in "good faith" is a triable issue of fact.

Putting aside the question of "good faith," plaintiff has submitted more than sufficient evidence that Red Robin's failure to pay him overtime was "willful." Labor Code Section 203 does not state that the employer's "misclassification" of an employee must be willful. It simply states that an employer is liable for waiting time penalties if it willfully fails to pay all wages owed to an

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT                    Page 9

1 employee within a certain period of time after their termination.[5] Thus, all plaintiff needs to show is
2 that he was improperly classified as exempt. Defendant's motion does not challenge plaintiff's claim
3 that he was misclassified, so plaintiff has sustained his burden of proof on this issue. This motion
4 cannot be granted with respect to waiting time penalties under Labor Code Section 203 because there
5 is a triable issue of fact as to whether defendant acted in good faith.

### C. RED ROBIN IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE THREE YEAR STATUTE OF LIMITATIONS FOR ITS WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT.

Defendant correctly cites *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988) and its progeny for the rule that proving an FLSA violation is "willful" for the purpose of applying a three year statute of limitation requires evidence that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." But what does this really mean? In *Herman v. RSR Security Services LTD.,* 172 F. 3d 132, 141 (2nd Cir. 1999) the Court of Appeals held that even when the employer doesn't know it is violating the FLSA, its conduct is "willful" where it disregards the "possibility" of a violation. That is exactly what occurred here.

Defendant claims it did not act "willfully" under the FLSA because, unlike the California Labor Code, the definition of "primary duty" set forth in C.F.R. 541.700(a) does not make the amount of time spent performing exempt tasks "determinative." While the test under the FLSA may not be "quantitative," the amount of time an employee spends on non-exempt duties is an important consideration under 29 C.F.R. 541.700(b):

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more

---

[5]Labor Code Section 203 states in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Labor Code Section 201(a) states that all wages must be paid immediately upon discharging an employee and within 72 hours of employee giving notice of their voluntary termination.

than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

Given the regulation's statement that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," defendant should have known that there was a distinct "possibility" that the amount of time plaintiff spent performing non-exempt duties would make him non-exempt under the FLSA. So how can it claim that it did not act willfully?

Defendant purports to rely on the "examples of managerial work" stated in 29 C.F.R. Section 541.102. In doing so, defendant provides an incomplete list. A review of the entire regulation reveals that plaintiff only engaged in a small fraction of the types of tasks that are considered "managerial:"

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Defendant fails to offer any evidence that plaintiff set or adjusted the pay rates of employees; that he maintained production or sales records; that he appraised employees' productivity or efficiency for the purpose of recommending promotions or other changes of status; that he handled employee complaints and grievances; that he planned the work; that he determined the techniques to be used; that he apportioned the work among the employees; that he determined the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; that he controlled the flow and distribution of materials or merchandise and supplies; that he provided for the safety and security of the employees or the property; that he planned and controlled the budget; or that he monitored or implemented legal compliance measures. The only evidence offered by defendant of any type of managerial work listed in this regulation is of

plaintiff "interviewing, selecting, and training employees, setting the schedule of the HOH employees, directing their work, and "disciplining them." However, plaintiff disputes defendant's claim that he hired, trained,[6] or disciplined any employees. His "primary" or "most important" duty was making sure that the food was prepared in accordance with the "pocket pal" in a timely manner and cutting labor costs. Defendant's budget did not permit plaintiff to schedule enough hours for non-exempt employees in the kitchen so he had to make up the difference by preparing food, cooking, washing dishes, and doing the expo job. None of this was done in secret. Defendant's manager knew or should have known that this is what plaintiff's job entailed. It cannot blind its eyes to this, then claim that his misclassification was not "willful."

Defendant talks a lot about plaintiff "phasing" HOH employees when the restaurant was not busy. This was not something that required much, if any, discretion or independent judgment. Once the restaurant died down after a meal rush, employees generally left in the order in which the came to work. And if the restaurant got busy again before the next shift, it was plaintiff who had to pick up the slack by filling in for the employees who were "phased."

Any time plaintiff spent phasing, directing other employees, or overseeing the restaurant when he was the only manager on duty was minimal compared to the amount of time he spent doing the same work as hourly employees. In *Heyman v. Safeway, Inc.* (2013) 216 Cal. App. 4th 795, 822, it was held that "work of the same kind performed by a supervisor's non-exempt employees generally is 'non-exempt,' even when that work is performed by a supervisor." Although *Heyman* involved a claim for overtime under the California Labor Code, the Wage Order specifically states that activities constituting exempt and non-exempt work are construed in the same manner in which the are construed by a list of federal regulations which includes 29 C.F.R. 541.102.

Plaintiff has offered more than enough evidence to show that defendant should have known that there was a very strong possibility that plaintiff was improperly classified under the FLSA. He has therefore sustained his burden of proving that he was willfuly misclassified.

---

[6]Karin Davie admitted at her deposition that Irvine was not a training restaurant. (Exhibit 4/81:20.)

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT          Page 12

**D. RED ROBIN IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR LIQUIDATED DAMAGES UNDER THE FAIR LABOR STANDARDS ACT.**

29 U.S.C. Section 216(b) states that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Despite the statutes use of the word "shall," 29 U.S.C. Section 260 states that the court has discretion to award no liquidated damages where "the employer shows to the satisfaction of the the court that the act or omission giving rise to such action was in good faith <u>and that he had reasonable grounds</u> for believing that his act or omission was not a violation of the Fair Labor Standards Act." Here, whether defendant has "reasonable grounds" is a disputed issue of material fact.

Unlike waiting time penalties under the California Labor Code, "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Security Services, LTD, supra.* "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages being the exception." *Ibid.*

Despite its difficult burden of proof, defendant claims that the Court should deny liquidated damages under 29 U.S.C. Section 216(b). It claims it acted in "good faith," by quoting *Alvarez v. IBP, Inc.,* 339 F. 3d 894, 909 (9th Cir. 2003) as only requiring an employer to prove "subjective good faith" and "objectively reasonable grounds" for believing that the act or omission does not violate the FLSA. In doing so, defendant deliberately ignores the Court's discussion of and reliance on *Herman v. RSR Security Services, LTD,* 172 F. 3d 132, 142 (2nd Cir. 1999) in which it was held that the employer could not prove good faith under the FLSA because he "had extensive knowledge of the FLSA's requirement, but utterly failed to take the steps necessary to ensure RSR's pay practices complied with the Act." Following this, the Court of Appeals in *Alvarez v. IBP, supra,* found that IBP "failed to take the steps necessary to ensure [its] [ ] practices complied with the [FLSA]." It

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT                Page 13

went even further by finding that "[m]istaking ex post explanation and justification for the necessary affirmative 'steps' to ensure compliance, IBP offers no evidence to show that it actively endeavored to ensure such compliance." *Ibid.*

In *Reich v. Southern New England Telecommunications Corporation,* 121 F. 3d 58, 71 (2nd Cir. 1997) it was unequivocally held that "good faith" under Section 260 "requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." Defendant has not offered any evidence that it did anything to determine whether its classification as plaintiff as exempt complied with the FLSA. None of the three managers whose deposition testimony is offered as evidence had any knowledge of what, if anything, defendant did in order to determine that plaintiff was exempt when he was hired. Claiming that he was exempt based on their "expectations" is not enough to show good faith under the FLSA. Even if it was, plaintiff has offered more than sufficient evidence to show a triable issue of fact.

**E.  DEFENDANT HAS NOT COMPLIED WITH THE LOCAL RULES GOVERNING THE FILING AND SERVICE OF MOTIONS FOR SUMMARY JUDGMENT.**

Local Rule 7-3 states "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." It also states that "[t]he conference shall take place at least seven (7) days prior to the filing of the motion." Defendant did not comply with this rule.

One of defendant's attorney emailed a three page "meet and confer" letter to plaintiff's attorneys on July 18, 2018. The letter said defendant intended to file a motion for summary adjudication of issues and cited authority in support of its positions. The letter gave plaintiff's attorneys until the following day, July 19, 2018, to respond and stated that defendant would file a motion for summary judgment if they did not do so. (Exhibit 9; Declaration of Jonathan Jackel, para. 9.)

After receiving the "meet and confer" letter plaintiff's counsel sent an email to defense counsel pointing out that it was unreasonable to expect a response by the next day, that under Local Rule 7-3 a motion for summary judgment cannot be filed until seven days after sending a "meet and

confer" letter, and that plaintiff's counsel would respond within that time period. This meant that defendant could not file its motion until July 25, 2018. Defendant's attorney responded in an email later that day in which he indicated that defendant would not file the motion until July 25, 2018. His email also asked plaintiff to stipulate to a special setting on August 27, 2018, since the last day for motions for summary judgments to be heard is August 23, 2018, and motions are only heard on Mondays. Plaintiff's attorneys responded to his email later that evening, stating that they could talk to him about this on Monday, July 23, 2018. (Jackel Declaration., para. 10.)

Plaintiff's attorneys called defense counsel on Monday, July 23, 2018, and explained to him that they could not stipulate to a special setting for a hearing on August 27, 2018, because they had already made plans to go on vacation. One of plaintiff's attorneys had reservations to fly Greece on July 31, 2018, and will be gone for almost three weeks, and that the other attorney had pre-paid plans to go up to go on vacation in Lake Tahoe for a week, starting on August 8, 2018, with some friends who are traveling there from the East Coast. If the hearing was going to be on August 27, 2018, the deadline for filing an opposition would be August 6, 2018, so this would interfere with their plans. Plaintiff's counsel asked what the "good cause" would be for requesting a special setting. Defense counsel did not say what it was. Instead, he said he could file the motion by midnight of July 23, 2018, so that it could be heard on August 20, 2018. Plaintiff's attorneys pointed out that this would not comply with Local Rule 7-3 because they would have to be personally served by the end of the day. (Id., para. 11.)

Defendant was able to electronically file its motion before midnight on July 23, 2018, so that the motion could be heard on August 20, 2018. (Id., para. 12.) In doing so, defendant failed to wait until seven days after meeting and conferring with plaintiff. This violated Local Rule 7-3.

Defendant also violated Local Rule 6-1 which requires 31 days notice when a motion is served by mail. Local Rule 5-3.2.1 states that the electronic filing of a document will automatically result in the document being emailed to "all attorneys who have appeared in the case and have consented to receive service threeugh the CM/ECF System." Local Rule 5-3.2.3 states that an attorney who files documents electronically through the CM/ECF System will be deemed to consent

TOPETE v. RED ROBIN
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT    Page 15

to receive electronic service of documents through the system.  In most cases this would probably not be an issue.  However, plaintiff's attorney had not as of that date consented to receiving service through the CM/ECF System or filed any documents through the system in this case. (Jackel Declaration, para. 13.)  It was defendants who removed this case from California Superior Court to the United States District Court and filed the Joint Rule 26(f) report.  As a result, plaintiff has not had to electronically file any documents up until now.

Plaintiff did not receive a copy of defendant's motion until July 24, 2018, giving it 27 days notice.  Given the fact that defendant did not wait until 7 days after the "meet and confer" to file its motion, and Local Rule 7-9 requires that plaintiff's opposition be file 21 days before the hearing, plaintiff was not given as much time to prepare its opposition as it should have been given.

## IV.  CONCLUSION

Defendant's Motion for Partial Summary Judgment should be denied for the above stated reasons.

                                                                ROUSSO & JACKEL

Dated: July 30, 2018                                        By: /s/*Jonathan Jackel*
                                                                       JONATHAN JACKEL
                                                                       Attorneys for Plaintiff