JONATHAN JACKEL (129146)
NORA ROUSSO (150275)
ROUSSO & JACKEL
116 E. Campbell Ave., Suite 2
Campbell, California 95008

Telephone: (408) 378-3200
Facsimile: (408) 378-3202

Attorneys for Plaintiff
MARCIANO TOPETE

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARCIANO TOPETE,<br><br>Plaintiff,<br><br>vs.<br><br>RED ROBIN INTERNATIONAL, INC., a Nevada Corporation, doing business as RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1 through 20, inclusive,<br><br>Respondents. | ) | CASE NO. 8:17-CV-01721 AG (JDEx)<br>*[Originally Orange County Superior Court Case No.: 30-2017-00930423-CU-OE-CJC]*<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>[*Filed concurrently with Plaintiff's Memorandum of Points and Authorities, Declarations of Marciano Topete, Erik Carpenter, and Jonathan Jackel, Plaintiff's Opposition to Defendant's Separate Statement of Uncontroverted Facts, and Plaintiff's Compendium of Exhibits*]<br><br>Date: August 20, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 10D<br><br>Complaint Filed: July 7, 2017<br>FAC Filed: July 27, 2017<br>Trial Date: October 2, 2018 |

In accordance with Local Rule 56-2, Plaintiff Marciano Topete ("Plaintiff") hereby submits the following Statement of Genuine in Opposition to Defendant's Motion for Partial Summary Judgement:

| PLAINTIFF'S GENUINE DISPUTED FACTS | EVIDENCE IN SUPPORT OF PLAINTIFF'S GENUINE DISPUTED FACTS |
|---|---|
| 1. Plaintiff's primary duty was getting food out of the kitchen the way RR wanted it in a timely manner and saving labor costs. | Declaration of Plaintiff, para. 3. |
| 2. Plaintiff spent more than half of his time doing non-exempt work, including preparing food, cooking, washing dishes, and expo. | Declaration of Plaintiff, para. 2. |
| 3. Defendant knew or should have known that plaintiff spent more than half of his time doing non-exempt work, including cooking, washing, dishes, and expo. | Declaration of Plaintiff, paras. 6 and 7. (plaintiff worked approximately 55 hours per week, so there was another manager present most of the time that plaintiff was working. The kitchen was not hidden from view, so the general manager and assistant managers could easily see what he was doing.)<br><br>Declaration of Erik Carpenter, Paras. 2 and 3. (Erik Carpenter was an Assistant Manager from the middle of 2013 until early 2014. He observed plaintiff spend most of his time cooking and doing expo when their shifts overlapped. All managers were expected to work all of the hourly positions in the restaurant in order to ensure that guests were served their food and drink orders in a timely manner. They were expected to do everything they could to serve guests quickly and to ensure that food and drink were prepared according to Red Robin's specifications. Working expo while they worked together.) |
| 4. Plaintiff spent less than half of his time as Kitchen Manager exercising discretion and independent judgement. | Exhibit A to Compendium of Exhibits [Declaration of Plaintiff, para. 5; Exhibit 3, Baily Depo, 15:20–16:6] (All Exhibits referred to hereafter are attached to the Compendium of Exhibits.); Exhibit 4 [Davie Depo, 86:19-88:8]. (Bailey's and Davie's testimony refers to the "Pocket Pal" which contains specific standards for cleaning, storing food, and recipes, as well as exact portions for every item on the menu.) |
| 5. Defendant knew that employees cannot be classified as exempt under California law unless they spend more than half of their time on duties involving the exercise of discretion and independent judgement. | Exhibit 4 [Depo. of Karin Davie, 31:7-19] |

TOPETE v. RED ROBIN
PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT
Page 2

| | |
|---|---|
| 6. Defendant did not have a realistic expectation that plaintiff would spend more than half of his time on exempt duties. | Declaration of Plaintiff, para. 3. (Although plaintiff was responsible for scheduling "Heart of House" team members, he was limited by the budget provided to him by the general manager. Red Robin used a computer program known as "Watson," which determined how much money could be spent on labor each week. The budget was prepared by the general manager. The kitchen was under staffed. This required plaintiff to make up the difference by doing the same hourly jobs as other kitchen employees.) |
| 7. Defendant's failure to pay all wages owed to plaintiff upon his termination was willful. | Declaration of Marciano Topete, Para. 10. (Defendant has not paid any of the overtime owed to plaintiff since his termination.) |

| | |
|---|---|
| 8. Defendant's classification of plaintiff as exempt under California law was not made in good faith. | Exhibit 3 [Depo. of Rebecca Bailey, 15:20-16:6]; Exhibit 4 [Depo. of Karin Davie, 86:19-88:8]. (Every step of the process for preparing food was controlled by specifications contained in the "Pocket Pal," described by Rebecca Bailey as "the Bible" and by Davie as "the coach." The Pocket Pal includes standards for cleaning, storing food, and recipes.<br><br>Exhibit 6 (Letter from defendant's Workers' Compensation Administrator stating plaintiff was expected to "lift" and "push/ pull up to 25 lbs. Frequently - up to 6 hours per day."<br><br>Topete Declaration, para. 3; Exhibit 4 [Depo. Of Karin Davie, 83:11-84:14]. (Plaintiff's scheduling of the"Heart of House" team members was limited by the budget provided to him by the general manager. The budget was not large enough to fully staff the kitchen because defendant wanted labor costs reduced in accordance with the projections created by the "Watson" computer program. Plaintiff was expected to make up the difference by doing the same hourly jobs as other kitchen employees.)<br><br>Exhibit 10 and Topete Declaration, para. 9. (Plaintiff's earnings statements state he worked "80 hours" every two weeks, as well as his hourly rate.)<br><br>Exhibit 4/Depo. Of Karin Davie, 52:25-53:4, 53:19-24, 54:7-13, 83:11-84:14, 89:16-92:17. (Red Robin's motto is that it gives its guests "the gift of time." "The Kitchen is expected to get the food out fast." Despite this, defendant wanted to keep labor costs down. It knew that from "time to time" plaintiff had to step in to cook and clean so they could **"deliver on their promises to guests."**) |

| | |
|---|---|
| 9. Defendant did not have reasonable grounds for believing the plaintiff was exempt under the FLSA. | Exhibit 3 [Depo. of Rebecca Bailey, 15:20-16:6]; Exhibit 4 [Depo. of Karin Davie, 86:19-88:8]. (Every step of the process for preparing food was controlled by specifications contained in the "Pocket Pal," described by Rebecca Bailey as "the Bible" and by Davie as "the coach." The Pocket Pal includes standards for cleaning, storing food, and recipes.<br><br>Exhibit 6 (Letter from defendant's Workers' Compensation Administrator stating plaintiff was expected to "lift" and "push/ pull up to 25 lbs. Frequently - up to 6 hours per day.")<br><br>Topete Declaration, para. 3; Exhibit 4 [Depo. Of Karin Davie, 83:11-84:14]. (Plaintiff's scheduling of the"Heart of House" team members was limited by the budget provided to him by the general manager. The budget was not large enough to fully staff the kitchen because defendant wanted labor costs reduced in accordance with the projections created by the "Watson" computer program. Plaintiff was expected to make up the difference by doing the same hourly jobs as other kitchen employees.)<br><br>Exhibit 8 and Topete Declaration, para. 9. (Plaintiff's earnings statements states he worked "80 hours" every two weeks, as well as his hourly rate.)<br><br>Exhibit 4 [Depo. Of Karin Davie, 52:25-53:4, 53:19-24, 54:7-13, 83:11-84:14, 89:16-92:17]. (Red Robin's motto is that it gives its guests "the gift of time." "The Kitchen is expected to get the food out fast." Despite this, defendant wanted to keep labor costs down. It knew that from "time to time" plaintiff had to step in to cook and clean so they could **"deliver on their promises to guests."**) |

ROUSSO & JACKEL

Dated: July 30, 2018

By: *\/s/ Jonathan Jackel*
JONATHAN JACKEL
Attorneys for Plaintiff